UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 13 |
| JOANNE C. PFEIFFER | : | |
| Debtor | : | Bankruptcy No. 11-13274 |
| _____ | | |
| JOANNE C. PFEIFFER | : | |
| Plaintiff | : | |
| v. | | |
| | : | |
| DOMINION MANAGEMENT OF DELAWARE t/a CASHPOINT and MICHAEL LESTER | : | Adversary No. 11-0421 |
| Defendants | : | |
| _____ | | |

................................................

MEMORANDUM

................................................

Before me is a motion filed by the two defendants seeking to compel arbitration and to stay this adversary proceeding pending the outcome of that arbitration. The plaintiff/debtor opposes such relief. After oral argument and consideration of the parties' supporting memoranda, this motion is ripe for determination.

I.

The following facts are not disputed.

On April 25, 2011, the plaintiff filed a voluntary petition in bankruptcy under chapter 13. Shortly thereafter, on May 12, 2011, she filed the above-captioned adversary proceeding.

In her complaint, the plaintiff alleges that she is a Pennsylvania resident who traveled to Claymont, Delaware, where, on November 9, 2009, she borrowed $800 from defendant Dominion. This loan was secured by a lien on her vehicle: a 1997 Jeep Grand Cherokee. See Complaint (ex. P-3). Under the terms of this loan, the debtor was obligated to repay monthly at least the accrued interest on the loan, which interest rate was disclosed at 0.9863% daily and 360% annually.[1] Id.

The debtor further alleges that she tendered monthly payments to Dominion for approximately one year with little or no principal reduction.[2] Complaint, ¶ 35. Thereafter, she stopped tendering payments (she asserts that Dominion informed her that she could do so) and her vehicle was repossessed in Pennsylvania without notice. Dominion returned the vehicle after the debtor filed her bankruptcy petition.

Dominion is alleged to be a Delaware corporation with offices in Alexandria, Virginia. Complaint, ¶ 3. The debtor asserts that Dominion advertises in Pennsylvania, but is not licensed to do business in Pennsylvania. Complaint, ¶¶ 9, 14.

In her complaint, the debtor asserts the following claims against Dominion and its president, defendant Michael Lester. Count I seeks damages for breach of contract—the defendants allegedly improperly repossessed her automobile without first proceeding to arbitration—as well as a declaration that the arbitration agreement is unenforceable owing to such breach. Count II seeks a determination that the arbitration

---

[1] The debtor, in April 2009, borrowed a similar amount from Dominion, on identical terms. She repaid this loan, with interest, prior to November 2009. See Complaint (ex. P-1); complaint, ¶ 32.

[2] Interest accrues at the rate of $7.8904 per day. Monthly interest is thus $236.71. Interest payments for one year would be $2,840.54 unless some principal reduction payments were made.

provision of the loan agreement—to be discussed below—is unconscionable in that it requires that the arbitration be conducted by the American Arbitration Association, which entity does not "provide a fair arbitral forum for consumer cases[.]" Complaint, ¶ 58. If the arbitration provision is presently enforceable, the plaintiff requests that "JAMS" be chosen as the arbitration forum. Complaint, ¶ 72. Count III seeks a determination that the loan agreement itself is unconscionable and so unenforceable, with the defendants required to relinquish the lien on the plaintiff's vehicle and return to her all non-usurious interest payments. Count IV is a usury claim under Pennsylvania law, with relief sought similar to Count III, along with attorney's fees. Count V is a fraudulent conveyance claim under 11 U.S.C. § 548, asserting that usurious interest paid by the debtor was without "reasonably equivalent value," paid when she was insolvent, and should be returned to the plaintiff as damages. In Count VI, the plaintiff contends that the defendants violated Pennsylvania's Unfair Trade Practices and Consumer Protection Law, (UTPCPL), 73 PS §§ 201 et seq., and demands treble damages and attorney's fees. Finally, in Count VII, the plaintiff demands damages, including punitive damages, based upon Pennsylvania common law claims of conversion and trespass, owing to Dominion's repossession of her vehicle and imposition of allegedly usurious interest charges.

In connection with these seven claims, the plaintiff avers that "some of the claims in the complaint may not be core matters which the bankruptcy court is empowered to finally determine, and the plaintiff does not yet consent to the bankruptcy court rendering final determinations of noncore matters in this adversary proceeding." Complaint, ¶ 7. Moreover, the plaintiff demands a trial by jury in this proceeding.

II.

The loan document provided to the plaintiff in November 2009 and signed by her is styled: "Motor Vehicle Equity Line of Credit Agreement and Truth in Lending Disclosure." Complaint (ex. P-3). This loan document states, in part, that the loan is secured by the borrower's vehicle. Id., ¶ 20. In the event of default in payments, the lender is permitted to repossess the vehicle "without notice . . . unless required by applicable law." Id., ¶ 24; see also id., ¶ 25. Paragraph 29 of the loan agreement contains a severability provision, and also provides that the agreement is to be "governed by federal law and, to the extent not preempted by federal law, by the laws of the State of Delaware." Id.

Paragraph 33 of the loan agreement, alongside of which are signatures of the plaintiff and a Dominion employee, states in part: "You agree to all of the provisions of the attached waiver of jury trial and arbitration provision." Complaint (ex. P-3).[3] Thereafter, the document sets forth terms of mandatory arbitration, although the plaintiff/borrower had the right to "reject arbitration" by written notice to the lender given within 30 days of the loan agreement. Complaint (ex. P-3, at 5).[4]

This arbitration agreement was to cover all "disputes" between borrower and lender. Id., ¶ 3. The term "dispute" is defined in paragraph 1 to include "all claims . . . arising from . . . the Agreement, including the Arbitration Provision, the validity and scope of this Arbitration provision and any claim or attempt to set aside this Arbitration

---

[3]This paragraph is out of sequence in exhibit P-3 attached to plaintiff's complaint.

[4]There is no assertion that the plaintiff exercised this right to opt out of arbitration.

4

provision." Id., ¶ 1(a). This definition includes claims based upon federal or state statutes, common law claims, as well as claims for damages or injunctive relief. Id., ¶¶ 1(e), (f), (h). The term "lender" includes individuals acting on behalf of Dominion. Id., ¶ 1.

The agreement also provides that the borrower acknowledges that she is "giving up the right to have trial by jury to resolve any dispute alleged against Lender . . ." and is "giving up the right to have a court, other than a small claims tribunal, resolve any dispute alleged against Lender. . . ." Id., ¶ 2(c), (d).

The arbitration provisions of the agreement are governed by the Federal Arbitration Act (FAA), and are to be construed under Delaware law. Id., ¶¶ 7, 9. More specifically, the arbitration agreement states:

> Any party to a dispute, including Related Third Parties, may send the other party written notice by certified mail return receipt requested of its intent to arbitrate and setting forth the subject of the dispute along with the relief requested, even if a lawsuit has been filed. Regardless of who demands arbitration, Borrower shall have the right to select any of the following arbitration organizations to administer the arbitration: the American Arbitration Association (1-800-778-7879) http://www.adr.org or National Arbitration Forum (1-800-474-2371) http://www.arb-forum.com. However, the parties may agree to select a local arbitrator who is an attorney, retired judge, or arbitrator registered and in good standing with an arbitration association and arbitrate pursuant to such arbitrator's rules. The party receiving notice of arbitration will respond in writing by certified mail return receipt requested within twenty (20) days. If Borrower demands arbitration, Borrower must inform Lender of the name of the arbitration organization Borrower has selected or whether Borrower desires to select a local arbitrator. If Lender and/or Related Third Parties demand arbitration, Borrower must notify Lender within twenty (20) days in writing by certified mail return receipt requested of Borrower's decision to select an arbitration organization or of Borrower's desire to select a local arbitrator. If Borrower fails

> to notify Lender, then Lender shall have the right to select an arbitration organization. The parties to such dispute will be governed by the rules and procedures of such arbitration organization applicable to consumer disputes, to the extent those rules and procedures do not contradict the express terms of the Agreement, including this Arbitration Provision, including the limitations on the arbitrator below. Borrower may obtain a copy of the rules and procedures by contacting the arbitration organization listed above.

Id., ¶ 4.

The borrower, however, in addition to her right to reject arbitration within thirty days of signing the loan agreement also has the right to a hearing in small claims court in certain instances:

> All parties, including Related Third Parties, shall retain the right to seek adjudication in a small claims court authorized by applicable law for disputes within the scope of such court's jurisdiction. Any dispute, which cannot be adjudicated within the jurisdiction of a small claims court, shall be resolved by binding arbitration. Any appeal of a judgment from a small claims court shall be resolved by binding arbitration.

Id., ¶ 6.

III.

A.

Under Pennsylvania law, specifically its Loan Interest and Protection Law (LIPL), 41 P.S. §§ 101-605, and its Consumer Discount Company Act (CDCA), 7 P.S. §§ 6201-6219, entities that lend $25,000 or less to Pennsylvania consumers, and that do not obtain a mortgage as collateral for their loans, may charge no more than 24% APR if

6

licensed by the Commonwealth of Pennsylvania, and no more than 6% APR if not licensed. See, e.g., Cash America Net of Nevada LLC v. Commonwealth, Dept of Banking, 607 Pa. 432 (2010). Such Pennsylvania interest rate statutes apply even when the lender has no offices and/or employees in Pennsylvania. Id. (Cash America Net was a Delaware LLC located in Nevada that solicited customers in Pennsylvania via the internet). Moreover, the Commonwealth of Pennsylvania, through its agencies, can enforce Pennsylvania law even if the loan agreement with borrowers provides that Delaware law applies. Pennsylvania Dep't of Banking v. NCAS of Delaware, LLC, 596 Pa. 638 (2008).[5] Were Delaware law to apply, it apparently has no limitations on interest rates that may be charged for the type of loan obtained by the debtor. 5 Del. Code §§ 2228(a), 2229; see Kaneff v. Delaware Title Loans, Inc., 587 F.3d 616, 622 (3d Cir. 2009) ("Delaware has no usury law.").

The instant adversary proceeding is but one of numerous lawsuits (often putative class actions) in which Pennsylvania borrowers are attempting to invalidate loans that would be usurious under Pennsylvania law but made by lenders asserting that the loans fall within the protection of Delaware law. See, e.g., Kaneff v. Delaware Title Loans, Inc., 587 F.3d 616 (3d Cir. 2009); Laspina v. Dominion Management of Delaware, C.A. No. 11-3764 (E.D. Pa. Aug. 10, 2011) (Jones, D.J.); Clerk v. Ace Cash Express, Inc., 2010 WL 364450 (E.D. Pa. Jan. 29, 2010); Fluke v. Cashcall, Inc., 2009 WL 1437593 (E.D. Pa. May 21, 2009); see also Alfeche v. Cash America International, Inc., 2011 WL 3565078 (E.D. Pa. Aug. 12, 2011) (loan governed by Nevada law). Typically,

---

[5]The Commonwealth may not be able to assert claims on behalf of individual borrowers. See Pennsylvania Dept. of Banking v. NCAS of Delaware, LLC, 995 A.2d 422 (Pa. Cmwlth. 2010).

such lawsuits are brought by borrowers in Pennsylvania state courts and removed by the lenders to federal court, with the lenders then demanding enforcement of an arbitration clause provision and the borrowers arguing that the arbitration clause is invalid, usually as unconscionable.  See, e.g., Kaneff v. Delaware Title Loans, Inc., 587 F.3d at 619; Martin v. Delaware Title Loans, Inc., 2008 WL 4443021 (E.D. Pa. Oct. 1, 2008).  As counsel for the debtor acknowledged in this dispute, arbitration forums have sided with the lender and applied Delaware rather than Pennsylvania law, which explains the positions of the parties in this adversary proceeding.  To date, reported decisions have supported the lenders' demand for arbitration.  See, e.g., Kaneff v. Delaware Title Loans, Inc.; Alfeche v. Cash America International, Inc.; Laspina v. Dominion Management of Delaware; Martin v. Delaware Title Loans, Inc.  The defendants here contend that those decisions were properly decided and should be followed.  The plaintiff argues that those decisions are distinguishable.

B.

The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16, reflects "a liberal federal policy favoring arbitration," as well as a determination that "arbitration is a matter of contract" to be enforced as are other contractual provisions.  AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1745 (2011).  The FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  A federal court, at the timely request of a party, has the power to stay a proceeding if it determines that a

8

cause of action falls under an enforeable written arbitration agreement. 9 U.S.C. § 3. "If one of the parties fails to comply with such an agreement, a court may order 'the parties to proceed to arbitration in accordance with the terms of the agreement.' 9 U.S.C. § 4." In re Mintze, 434 F.3d 222, 229 (3d Cir. 2006). Thus, in general, "[t]he FAA makes agreements to arbitrate enforceable to the same extent as other contracts." Harris v. Green Tree Financial Corp., 183 F.3d 173, 178 (3d Cir. 1999). Indeed, "federal law presumptively favors the enforcement of arbitration agreements." Id., at 178. Doubts as to the scope of an arbitration agreement should be resolved in favor of arbitration. Granite Rock Co. v. International Brotherhood of Teamsters, 130 S. Ct. 2847, 2857 (2010).

In Mintze, the Circuit Court of Appeals held that "[t]he core/non-core distinction does not, however, affect whether a bankruptcy court has the discretion to deny enforcement of an arbitration agreement." In re Mintze, 434 F.3d at 229. Instead, a bankruptcy court has no discretion not to enforce an arbitration agreement unless Congress intended otherwise. The Circuit Court explained:

> The FAA's mandate can, however, be overridden. If a party opposing arbitration can demonstrate that "Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue," the FAA will not compel courts to enforce an otherwise applicable arbitration agreement. McMahon, 482 U.S. at 227. . . . To overcome enforcement of arbitration, a party must establish congressional intent to create an exception to the FAA's mandate with respect to the party's statutory claims. Congressional intent can be discerned in one of three ways: (1) the statute's text, (2) the statute's legislative history, or (3) "an inherent conflict between arbitration and the statute's underlying purposes." McMahon, 482 U.S. at 227. . . .

Id., at 229; see In re Olympus Healthcare Group, Inc., 352 B.R. 603, 601 (Bankr. D. Del. 2006).

The Third Circuit held in Mintze that pre-bankruptcy arbitration agreements are enforceable by a bankruptcy court unless Congress has expressed a contrary intent; moreover, such a contrary intent does not arise from the policy decision to establish specialized Article I courts overseeing bankruptcy cases. See also Green Tree Financial Corp.-Alabama v. Randolph, 531 U.S. 79, 90 (2000) ("In determining whether statutory claims may be arbitrated, we first ask whether the parties agreed to submit their claims to arbitration, and then ask whether Congress has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue.").

Furthermore, in Mintze, the appellate court noted that claims asserting violations of federal or state consumer protection statutes are not placed outside the scope of the FAA. Id., at 31-32; see In re Cooley, 362 B.R. 514, 518 (Bankr. N.D. Ala. 2007) ("[I]n consumer finance transactions where the parties have entered into arbitration agreements, TILA claims should be resolved through arbitration."). Congress expressed no intent to preclude arbitration of such claims, if the parties so agreed.

All of the claims asserted by the plaintiff in this proceeding are non-core claims, except for Count V: the fraudulent conveyance claim under section 548. See generally In re Mullarkey, 536 F.3d 215, 223 (3d Cir. 2008); Halper v. Halper, 164 F.3d 830, 837-39 (3d Cir. 1999). The Third Circuit Court of Appeals in Mintze has made clear that I have no discretion to decline to enforce the arbitration agreement in this proceeding as to those non-core claims, to the extent there is an enforceable arbitration agreement. If there is any discretion concerning the core fraudulent conveyance claim, I decline to

10

exercise such discretion, as this claim is but a variant of the plaintiff's state court usury claim and falls within the scope of the parties' arbitration provisions.[6]

C.

A motion to stay a proceeding and compel arbitration under the FAA will be granted when there are no material facts in dispute, there is a valid arbitration agreement and the claims made by the plaintiff fall within the scope of the arbitration agreement. See, e.g., Century Indem. Co. v. Certain Underwriters at Lloyd's, London, 584 F.3d 513, 523 (3d Cir. 2009); Alfeche v. Cash America International, Inc., 2011 WL 3565078, at *3; Martin v. Delaware Title Loans, Inc., 2008 WL 4443021, at *3.

The plaintiff here does not contend that her claims against the defendants fall outside the scope of the arbitration agreement; nor does she suggest that there are material facts in dispute. For example, her contention in Count III that the loan agreement was unconscionable represents a challenge to the agreement as a whole and so constitutes a claim that must be considered by the arbitrator. See Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 447 (2006); Kaneff v. Delaware Title Loans, Inc., 587 F.3d at 621.

A challenge to the validity of the arbitration clause itself, however, remains for a court to determine. See id. Although the debtor asserted in her complaint that the

---

[6] The court in Mintze did suggest that substantive bankruptcy law provisions may not be within the scope of the FAA. Id., at 231-32. The plaintiff's section 548 claim, to the extent it states a cause of action (an issue not before me), is dependent upon her state law usury claim.

11

arbitration agreement at issue here is invalid because it is unconscionable, Count II, at oral argument she withdrew that contention. The loan agreement provided that the debtor could reject the arbitration provisions within 30 days of the date of the agreement, which right of rejection has been held to undermine any unconscionability challenge. See, e.g., Clerk v. Ace Cash Express, Inc., 2010 WL 364450, at *9; Fluke v. Cashcall, Inc., 2009 WL 1437593, at *6-*8; Martin v. Delaware Title Loans, Inc., 2008 WL 4443021, at *4. Moreover, the loan agreement also provides that Dominion will initially pay all arbitration fees at the borrower's request. See ex. P-3, ¶ 5. Thus, there is no issue about the debtor's inability to demand arbitration because of inadequate funds. Compare Kaneff v. Delaware Title Loans, Inc., 587 F.3d at 624-25 (the need for a borrower to advance arbitration fees may be an unconscionable provision); Spinetti v. Service Corp. International, 324 F.3d 212 (3d Cir. 2003) (same).[7]

       Although the arbitration agreement may be valid, the debtor argues nonetheless that Dominion—by repossessing her automobile without first arbitrating its right to do so— either waived its enforceability or breached the arbitration agreement.[8] Such a contractual breach, the debtor maintains, also renders the provision unenforceable. Dominion counters by emphasizing its contractual right to repossess the automobile

---

[7]The severability provision of the loan agreement would allow a court to sever any unconscionable provision regarding arbitration fees. See Kaneff v. Delaware Title Loans, Inc., 587 F.3d at 625.

[8]In Kaneff v. Delaware Title Loans, Inc., 587 F.3d at 619 n.3, the court quotes from a loan agreement that expressly excluded from its arbitration clause the lender's right to seek repossession of its collateral upon default. See also Straub v. Citifinancial Auto Credit, Inc. 2011 WL 587291, at *2 (S.D. Ohio 2011) (mentioning contractual provision that the exercise of self-help remedies does not waive arbitration agreement). The debtor thus asserts that the absence of such an exception in her loan agreement with Dominion is dispositive.

without prior notice to the debtor. The absence of notice, it argues, constitutes an implied exception to the arbitration provision.

I find the debtor's contention—that Dominion's conduct renders the arbitration agreement unenforceable—unpersuasive, without now deciding whether Dominion breached its loan agreement.

It is well-recognized that a party can waive the right to arbitrate a dispute "if the party '[s]ubstantially invoke[s] the litigation machinery before asserting its arbitration right.' . . . A party substantially invokes the litigation machinery when, for example, it files a lawsuit on arbitrable claims, engages in extensive discovery, or fails to move to compel arbitration and stay litigation in a timely manner." Lewallen v. Green Tree Servicing, L.L.C., 487 F.3d 1085, 1090 (8th Cir. 2007) (citation and quoted reference omitted).

"[W]aiver of the right to arbitrate based on litigation conduct remains presumptively an issue for the court to decide. . . ." Ehleiter v. Grapetree Shores, Inc., 482 F.3d 207, 221 (3d Cir. 2007). Moreover, "[c]onsistent with the strong preference for arbitration in federal courts, waiver 'is not to be lightly inferred.'" PaineWebber Inc. v. Faragalli, 61 F.3d 1063, 1068 (3d Cir. 1995) (quoting Gavlik Const. Co. v. H.F. Campbell Co., 526 F.2d 777, 783 (3d Cir. 1975)). Furthermore, the evidentiary burden is upon the party that asserts that such a waiver occurred. See Great Western Mortg. Corp. v. Peacock, 110 F.3d 222, 233 (3d Cir. 1997).

In general, whether a party has waived a contractual right to arbitrate "will normally be found only 'where the demand for arbitration came long after the suit commenced and when both parties had engaged in extensive discovery.'" PaineWebber

13

Inc. v. Faragalli, 61 F.3d at 1068-69 (quoting Gavlik Const. Co. v. H.F. Campbell Co., 526 F.2d at 783)).  More specifically:

> In Hoxworth, we observed that "prejudice is the touchstone for determining whether the right to arbitrate has been waived" by litigation conduct.  980 F.2d at 925.  After surveying the case law of our court and other circuits, we compiled a nonexclusive list of factors relevant to the prejudice inquiry: "[1] the timeliness or lack thereof of a motion to arbitrate . . . [; 2] the degree to which the party seeking to compel arbitration [or to stay court proceedings pending arbitration] has contested the merits of its opponent's claims; [3] whether that party has informed its adversary of the intention to seek arbitration even if it has not yet filed a motion to stay the district court proceedings; [4] the extent of its non-merits motion practice; [5] its assent to the [trial] court's pretrial orders; and [6] the extent to which both parties have engaged in discovery."  Id. at 926-27 (internal citations omitted).

Ehleiter v. Grapetree Shores, Inc., 482 F.3d at 222; see, e.g., Zimmer v. CooperNeff Advisors, Inc., 523 F.3d 224, 231-32 (3d Cir. 2008); South Broward Hospital District v. Medquist, Inc., 258 Fed. Appx. 466, 467-68 (3d Cir. 2007) (non-precedential).

Clearly Dominion has not demanded arbitration long after this adversary proceeding commenced and discovery had taken place.  Rather, Dominion has sought relief under the FAA in immediate response to the service of the debtor's complaint.  Moreover, were the dispute now to be stayed in favor of arbitration, the debtor would not be prejudiced.  She would be free to raise her contention that Dominion violated the loan agreement by its self-help repossession of her automobile.

Less recognized is the concept that an arbitration agreement can be rendered unenforceable owing to a breach of its provisions by a party.  The debtor relies exclusively upon a Ninth Circuit Court of Appeals decision Brown v. Dillard's Inc., 430 F.3d 1004 (9th Cir. 2005), which decision is distinguishable.

In Brown, the plaintiff was an employee of the defendant. And the defendant had imposed an arbitration provision upon its employees as a condition of employment. After the plaintiff's employment was terminated, she sought to arbitrate her employer's right to terminate, in full accord with the arbitration provision. She notified the defendant, engaged the American Arbitration Association, and paid her portion of the arbitration fee. The defendant, however, ignored all notices of the arbitration, even those provided by the AAA. Stymied by the defendant's inaction, the plaintiff initiated a state court lawsuit, which the defendant removed to federal court and then moved to compel arbitration under the FAA.

The Ninth Circuit affirmed the district court's denial of defendant's motion, holding that the employer/defendant's earlier refusal to arbitrate constituted a breach that "was tantamount to a repudiation of the arbitration agreement." Id., 430 F.3d at 1011. To hold otherwise, the appellate court reasoned, would provide an incentive for employers "to refuse to arbitrate claims brought by employees in the hope that the frustrated employees would simply abandon them." Id., 430 F.3d at 1012. Alternatively, the appellate court held that the defendant waived its right to arbitrate, as the plaintiff had been prejudiced by the defendant's delay, loss of potential evidence and attorney's fees incurred. Id., 430 F.3d at 1012.

Here, Dominion, by repossessing the debtor's automobile, has not repudiated the arbitration agreement. Rather, it disputes the debtor's interpretation as to the scope of that agreement. Challenges to the scope of the arbitration agreement are themselves made arbitrable under the terms of the loan agreement set out above. Thus, if the debtor persuades the arbitrator that Dominion had no right to repossess her

15

automobile, she can be awarded damages for such improper conduct. See <u>Straub v. Citifinancial Auto Credit, Inc.</u>, 2011 WL 587291 (S.D. Ohio 2011) (granting a stay of civil litigation under the FAA so that the AAA can determine whether an auto lender breached a loan agreement by repossessing the plaintiff's vehicle).

For these reasons, I conclude that the arbitration agreement is enforceable and that, under section 3 of the FAA, this adversary proceeding must be stayed pending arbitration.

D.

As her final alternative argument, the debtor requests, if the arbitration agreement is enforceable and a stay in favor of arbitration required, that this court designate JAMS to conduct the arbitration rather than the American Arbitration Association. She contends that in prior arbitration hearings conducted by the AAA the AAA-appointed arbitrator has consistently applied Delaware law, which, as noted earlier, the debtor believes is improper.

Section 5 of the FAA permits a court to designate an arbitrator only in limited circumstances:

> If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement

16

> with the same force and effect as if he or they had been
> specifically named therein; and unless otherwise provided in
> the agreement the arbitration shall be by a single arbitrator.

9 U.S.C. § 5.

In general, the provisions of an arbitration agreement designating a specific arbitrator or arbitration forum will be enforced. See, e.g., Poly-America, Inc. v. Beech St. Corp., 2001 WL 1326450, at *3 (N.D. Tex. 2001). An exception to this statutory requirement may occur when the designated arbitrator is unavailable:

> Courts have interpreted this language, in an attempt to
> delineate the boundaries of this power of appointment. In
> general, Section 5 of the FAA permits a court to appoint a
> substitute arbitrator, where the chosen arbitrator is
> unavailable.

Clerk v. First Bank of Delaware, 735 F. Supp.2d 170, 180 (E.D. Pa. 2010).

Under the parties' loan agreement, the American Arbitration Association (AAA) and the National Arbitration Forum (NAF) are designated as the agreed upon arbitration forums. The plaintiff alleges (and the defendants do not dispute) that the NAF "ceased performing all consumer arbitrations," and thus is unavailable. Complaint, ¶ 56; see Clerk v. Ace Cash Express, Inc., 2010 WL 364450, at *10 ("Both parties acknowledge that . . . the NAF is no longer available to arbitrate this dispute. . . ."). The plaintiff does not contend, however, that the AAA is also unavailable; thus FAA section 5 is inapplicable.

> [T]he AAA issued a moratorium on consumer debt collection
> arbitrations in which "the company is the filing party." Here,
> however, as Defendant correctly points out, the instant dispute
> is not one in which the company is the filing party. Instead, it
> is Plaintiff who is the filing party, as she seeks to prosecute
> her claims against Defendant ACE. Plaintiff's argument
> simply fails to address this fact, and instead focuses on an
> analysis of the alleged inapplicability of § 5 of the FAA.

17

> Such an argument is irrelevant where, as here, the AAA remains available and able to administer the arbitration.

Clerk v. ACE Cash Express, Inc., 2010 WL 364450, at *10; see also In re California Title Ins. Antitrust Litigation, 2011 WL 2566449, at *4 (N.D. Cal. 2011) (although NAF was unavailable, the availability of the AAA as referenced in the arbitration agreement was enforceable).

Nonetheless, the plaintiff requests that this court exclude the AAA because she believes that the arbitrator will improperly decline to apply Pennsylvania law to her claims against the defendants. Implicit in this request is that I now determine that the Third Circuit's choice-of-law decision in Kaneff applying Pennsylvania law to determine whether an arbitration clause is unconscionable applies with equal force to the plaintiff's usury claims. The FAA precludes my so doing, leaving that issue to the arbitrator. See Alfeche v. Cash America International, Inc., 2011 WL 3565073, at *5 ("The illegality of the entire loan agreement [under Pennsylvania usury law] is for the arbitrator, not the court to decide.").

Moreover, there are provisions in the arbitration agreement, quoted above, that may permit the plaintiff to choose a forum—small claims court—or a "local arbitrator" other than the AAA. See Smith v. Steinkamp, 2002 WL 1364161, at *8 (S.D. Ind. 2002) (noting the right of the plaintiffs to choose an arbitrator other than the one they assert is biased in granting motion to compel arbitration).

Accordingly, plaintiff's request that I choose a non-AAA arbitration forum will be denied.

IV.

Finally, as noted at the outset, this proceeding involves primarily non-core claims for which the plaintiff did not consent to my entering any final judgment. In <u>Crysen/Monenay Energy Co.</u>, 226 F.3d 160 (2d Cir. 2000), the Second Circuit Court of Appeals affirmed a process by which the bankruptcy court issued a stay of proceedings under 9 U.S.C. § 3 in a non-core proceeding, compelled arbitration and then, after the arbitration process had been completed, entered a recommendation to the District Court to uphold the arbitration award, which ruling the Second Circuit then affirmed.

In this adversary proceeding, I shall also enter an order under FAA section 3 staying this adversary proceeding (but not staying the administration of this chapter 13 case) and compelling arbitration. After the arbitration process is completed, the parties will return to this court for the entry of recommendations to the district court as to the non-core claims.

An appropriate order will be entered.

_____
BRUCE FOX
United States Bankruptcy Judge

Dated: September 8, 2011